**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **BANKERS LIFE AND CASUALTY COMPANY,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **Case No. 10 C 3769** |
| **KEVIN VOLSKY, DAVID JARVIS, SCOTT RUSH, ANDREW RIDGEWAY, and JON HAAS,** | ) ) ) ) | **Magistrate Judge Morton Denlow** |
| **Defendants.** | ) ) | |

**TO:   THE HONORABLE WILLIAM T. HART
       UNITED STATES DISTRICT JUDGE**

<u>**REPORT AND RECOMMENDATION**</u>

This matter comes before the Court for the purpose of conducting an evidentiary hearing and making a report and recommendation in connection with Plaintiff Bankers Life and Casualty Company's ("Plaintiff" or "Bankers Life") motion for preliminary injunction to enjoin Defendant Kevin Volsky ("Volsky") from violating the confidentiality, non-disclosure, customer non-solicitation, and anti-raiding provisions of his Agent Contract with Plaintiff.

The Court held a preliminary injunction hearing in this matter on July 26, 2010 with respect to Volsky. Defendant Jon Haas has been dismissed from this action, and by agreement, the remaining three Defendants are no longer the subject of Plaintiff's Motion for Preliminary Injunction.

Volsky did not appear at the preliminary injunction hearing. *See* PX 1.[1] Further, he failed to respond to interrogatories and document requests, despite being ordered by this Court to do so. Dkt. 35. Volsky also has refused to appear for his deposition, failing to appear as noticed and failing to respond to Plaintiff's request that he appear at a mutually agreeable place and time. PX 4. As a consequence, the Court permitted Plaintiff to rely upon the written evidence, arguments and authority it filed earlier in the case – Plaintiff's Verified Complaint and Memorandum in Support of its Motion for Temporary Restraining Order, Preliminary Injunction Hearing, and an Order Granting Preliminary Injunction (Dkt. 1 and 7). In addition, the Court permitted Plaintiff to supplement that evidence with the deposition transcripts of two deponents who reside more than 100 miles from this Court.

The following constitutes the Court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure. To the extent certain findings may be deemed conclusions of law, they shall also be considered conclusions. Similarly, to the extent matters contained in the conclusions of law may be deemed findings of fact, they shall also be considered findings.

## I.  FINDINGS OF FACT

1.      Bankers Life is incorporated in Illinois, with its principal place of business in Illinois. Bankers Life provides seniors with insurance and financial products, such as long term care insurance, life annuities, and Medicare Supplement insurance.

2.      Bankers Life utilizes agents to provide these products to its customers. By

---

[1]  References to "PX __" are to Plaintiff's trial exhibits. Reference to "Dkt. __" are to docket entries.

meeting face-to-face with customers, learning detailed information about them, and addressing their insurance needs, agents develop, maintain, and advance the relationships between Bankers Life and its customers.

3. It takes years to develop these customer relationships, which are characterized by low turnover and long-term stability, consistent with the nature of the products at issue – long-term care insurance and life annuities. Each year, approximately 90% of Bankers Life's policyholders renew their policies with Bankers Life, and the business relationship between Bankers Life and its policyholders, on average, lasts approximately nine years. PX 3 at Ex. A (Declaration of Scott Goldberg, Vice President of Strategy and Business Development for Bankers Life).

4. Bankers Life invests substantial time and resources in obtaining and developing these customer relationships.

5. Volsky is a former agent in Bankers Life's Orlando, Florida office.

6. As a condition of his appointment as a Bankers Life agent, Volsky signed a valid and enforceable Agent Contract on October 15, 2007. PX 2 at Ex. A.

7. Volsky's Agent Contract contains confidentiality, anti-raiding, and customer non-solicitation provisions. *Id.* at ¶¶ 6, 24.

8. Specifically, by the terms of the Agent Contract, Volsky is prohibited from – during the term of the contract and for 24 months thereafter in the territory serviced by Volsky's branch sales office – "personally or through the efforts of others, induc[ing] or attempt[ing] to induce … any policyholder of [Bankers Life] to relinquish, surrender,

3

replace, or lapse any policy issued by [Bankers Life]." *Id.* at ¶ 24. The restricted territory for Volsky is comprised of Orange, Seminole, and Osceola counties in Florida.

9.    On or about May 15, 2009, Volsky terminated his agent relationship with Bankers Life.

10.    Since the termination of his relationship with Bankers Life, Volsky has breached his Agent Contract on at least three occasions:

(a)    Volsky contacted Bankers Life policyholder Betty Monroe in or about September 2009 and induced her to roll over funds from her Bankers Life IRA annuity, which she originally purchased from Volsky, to an IRA annuity offered by American National Insurance Co., a Bankers Life competitor. Ms. Monroe's deposition testimony establishes that Volsky did not know her or sell insurance to her prior to his association with Bankers Life. Ms. Monroe's testimony also establishes that Volsky came to her home, told her that Bankers Life was in financial distress, told her that her funds were at risk, and advised her to roll over the funds in her IRA annuity to American National Insurance. Ms. Monroe incurred a substantial penalty in doing so. Ms. Monroe confirmed that Volsky contacted her, not the other way around, and that she would not have transferred the funds from her Bankers Life product if Volsky had not advised her to do so. Ms. Monroe resides in Winter Park, Florida, which is within the restricted territory of Volsky's Agent Contract. PX 7 at 5, 9-15, 7-18, 21, Ex. 1.

(b)    In or about January 2010, Volsky contacted Bankers Life policyholder Cleaster Denmark and induced her to cancel her life insurance policy with Bankers Life. Ms.

Denmark's deposition testimony confirms that Volsky came to her home and told her that she should cancel her Bankers Life policy, which she did. Ms. Denmark resides in Orlando, Florida, which is within the restricted territory of Volsky's Agent Contract. PX 6 at 10-14.

(c)     In or about May or June 2010, Volsky contacted Bankers Life policyholders Sandra and Ed Schneider and advised them to switch their Medicare Supplement policies and Mr. Schneider's life insurance policy from Bankers Life to Mutual Bank of Omaha. Based upon this advice, Mr. and Mrs. Schneider lapsed their Bankers Life policies. The factual details of this breach are supported by the Declaration of Keith Henderson; Mr. Henderson spoke with Ms. Schneider on June 14, 2010. Ms. Schneider did not appear for her subpoenaed deposition, so the Court considers Mr. Henderson's Declaration to be probative. PX 5.

11.     At least thirty-four (34) individuals to whom Volsky sold policies and serviced while a Bankers Life agent have had their policies lapse since the termination of Volsky's agent relationship with Bankers Life. This is an unusually high number. PX 3 at Ex. B, ¶ 6 (Declaration of Tom Phelan, Branch Sales Manager or the Orlando area branch of Bankers Life).

12.     Volsky has refused to respond to interrogatories and document requests, and has refused to appear for his deposition. From this, combined with the unusually high number of policy lapses discussed in the preceding paragraph, the Court draws the adverse inference that there likely are additional breaches by Volsky.

13.     Bankers Life has been damaged by these breaches of Volsky's Agent Contract.

## II.  CONCLUSIONS OF LAW

### A.    Jurisdiction and Choice of Law.

The Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.  Illinois law governs the enforceability of the Agent Contract.  PX 2 at Ex. A, ¶ 25, Addendum A ¶ (r). However, federal standards govern Caremark's request for a preliminary injunction.  *See Vencor, Inc. v. Webb*, 33 F.3d 840, 845 (7th Cir. 1994).

### B.    Standard for a Preliminary Injunction.

To obtain a preliminary injunction, a movant must demonstrate: 1) some likelihood of success on the merits; 2) an inadequate remedy at law and irreparable harm if preliminary relief is denied; 3) the irreparable harm that the nonmovant will suffer if the relief is granted, balanced against the irreparable harm to the movant if the relief is denied; and 4) the public interest, *i.e.*, the effect that the granting or denying of the injunction will have on non-parties. *Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 811 (7th Cir. 2002).  The more likely it is that the plaintiff will succeed on the merits, the less the balance of irreparable harms need favor the plaintiff's position.  *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 895-96 (7th Cir. 2001).

### C.    Bankers Life Has Met the Standard for a Preliminary Injunction.

Bankers Life has demonstrated a likelihood of success on the merits.  In violation of the non-solicitation provisions contained in paragraph 24 of the Agent Contract, Volsky has solicited Bankers Life policyholders, with the sole purpose of having Bankers Life policyholders cancel, relinquish, surrender, replace, or lapse their Bankers Life policies.

6

Volsky has breached his Agent Contract on at least three occasions, and his refusal to participate in discovery or appear for his deposition, along with other evidence, indicate a likelihood of additional breaches.

The non-solicitation provisions are likely enforceable under Illinois law, as they appear to be reasonable in duration and scope. The 24-month restriction is reasonable. *Arpac Corp. v. Murray*, 589 N.E.2d 640, 649-50 (Ill. App. Ct. 1992) (affirming enforceability of a two-year prohibition). Illinois courts have upheld restrictive covenants of longer durations. *See, e.g.*, *Tyler Enterprises of Elwood, Inc. v. Shafer*, 573 N.E.2d 863, 866 (Ill. App. Ct. 1991) (three year restrictive period reasonable); *Decker, Berta & Co. v. Berta*, 587 N.E.2d 72, 76-77 (Ill. App. Ct. 1992) (same). No geographic scope limitation is necessary where, as here, the restriction is limited to customers and does not prohibit Volsky from competing with Bankers Life generally. *Abbott-Interfast Corp. v. Harkabus*, 619 N.E.2d 1337, 1340-41 (Ill. App. Ct. 1993). However, if a geographic limitation were necessary, Illinois courts generally look to whether or not the restricted area is "co-extensive" with the area in which the employer does business. *Midwest TV v. Oloffson*, 699 N.E.2d 230, 235 (Ill. App. Ct. 1998). Here, the restricted area is "the territory regularly serviced by the branch sales office of the Company where the Agent normally submits business." This area – Orange, Seminole and Osceola counties in Florida – is where Bankers Life maintains an office and where Volsky performed services on behalf of Bankers Life.

The customer non-solicitation provision is reasonably designed to protect Bankers Life's legitimate business interests of protecting its customer relationships, as Bankers Life

7

appears to have near-permanent relationships with its customers. *See R. Jager Agency v. Steward*, 625 N.E.2d 397, 400 (Ill. App. Ct. 1993). Each year, approximately 90% of Bankers Life's policyholders renew their policies with Bankers Life, and the business relationship between Bankers Life and its policyholders, on average, lasts approximately nine years. The extent of the personal customer contact and knowledge of the customers weighs heavily in favor of a finding of near-permanent customer relationships. Also, the nature of Bankers Life's business, *i.e.*, providing products, such as long term care insurance and life annuities weighs in favor of a finding of near-permanent customer relationships.

Bankers Life is also likely to prevail on its claim for tortious interference with contract and/or prospective economic advantage. To make a claim for tortious interference with contract, a plaintiff must show: 1) the existence of a valid and enforceable contract; 2) the defendant's awareness of the contract; 3) the defendant's intentional inducement of a breach of the contract; 4) a subsequent breach by a third party as a result of defendant's conduct; and 5) damages resulting from the breach. *Euroholdings Capital & Inv. Corp. v. Harris Trust and Sav. Bank*, 2008 U.S. Dist. LEXIS 22456, at *11 (N.D. Ill. March 18, 2008). Similarly, to establish a claim for tortious interference with prospective economic advantage, a plaintiff must demonstrate: 1) it has a reasonable expectation of a future business relationship; 2) the defendant's knowledge of that expectation; 3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectations from ripening; and 4) damages. *Integrated Genomics, Inc. v. Nikos Kyrpides*, 2008 U.S. Dist. LEXIS 16838, at *39 (N.D. Ill. Mar. 4, 2008).

The evidence presented demonstrates that Bankers Life will likely prevail on these claims. Despite knowledge of the contents of his Agent Contract, Volsky solicited Bankers Life policyholders. Volsky was fully aware of Bankers Life's reasonable expectation of the continuity of these relationships, and wrongfully interfered.

To obtain injunctive relief, a plaintiff must show that, absent injunctive relief, it will suffer irreparable harm. There is an assumption of irreparable harm where a former employee breaches a non-compete agreement. *CUNA Mut. Life Ins. Co. v. Kuperman*, 1998 U.S. Dist. LEXIS 622, at *32 (N.D. Ill. 1998). Additionally, injunctive relief is especially appropriate where the plaintiff's losses are not yet fully known and/or easily calculable. *Kinney v. Intl Union of Operating Eng'rs, Local 150*, 994 F.2d 1271, 1279 (7th Cir. 1993).

Here, it is impossible to fully calculate the damages resulting from Volsky's conduct. Thus far, Bankers Life has already lost customers who may have renewed their policies over many years, and it appears there may have been others.

Bankers Life must show that the irreparable harm to it if this Court does not grant preliminary relief outweighs the irreparable harm that Volsky will suffer if the preliminary injunction is granted. Given the strong likelihood of Bankers Life's success on the merits, this balance need only slightly weigh in Bankers Life's favor. *See Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of America*, 549 F.3d 1079, 1086 (7th Cir. 2008).

Here, the irreparable harm to Bankers Life if this Court does not grant preliminary relief is that it will likely continue to lose existing and/or potential customers. On the other

hand, the only potential harm to Volsky if this Court grants preliminary relief is that he would remain bound by his reasonable contractual obligations.

Finally, the Court considers any effect that the granting or denying of a temporary restraining order will have on non-parties. Here, there is no foreseeable harm to the granting of such an order, as Bankers Life's customers can continue their existing polices without interruption for this limited period. Thus, the burden on the public is minimal, particularly when compared to the legitimate business interests that Bankers Life is seeking to protect.

## IV. CONCLUSION

**For the foregoing reasons, this Court recommends that Bankers Life's Motion for Preliminary Injunction against Defendant Kevin Volsky be granted. Specifically, this Court recommends that the attached Preliminary Injunction Order be entered as to Defendant Kevin Volsky through the trial date in this matter.**

**Date: July 28, 2010**

Respectfully submitted,

**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**

Any objections to the Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of the receipt of this notice. Failure to file objections within the specified time waives the right to appeal the Magistrate Judge's Report and Recommendation.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **BANKERS LIFE AND CASUALTY COMPANY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | **Case No. 10 C 3769** |
| | ) | |
| **KEVIN VOLSKY, DAVID JARVIS, SCOTT RUSH, ANDREW RIDGEWAY, and JON HAAS,** | ) | **Judge William T. Hart** |
| | ) | |
| | ) | **Magistrate Judge Denlow** |
| **Defendants.** | ) | |

## PRELIMINARY INJUNCTION ORDER AS TO DEFENDANT VOLSKY

This matter having come before the Court on the Motion for Preliminary Injunction of Plaintiff Bankers Life and Casualty Company ("Bankers Life") against Defendant Kevin Volsky, and based on the Court's findings of fact and conclusions of law,

IT IS ORDERED that Defendant Kevin Volsky and any persons who receive actual notice of this order and who are in active concert or participation with him, are hereby restrained and prohibited from doing or continuing to do the following:

(a)     Breaching his Agent Contract with Bankers Life, including the confidentiality, non-disclosure, customer non-solicitation, and anti-raiding provisions contained therein;

(b)     Directly or indirectly using, disclosing, misappropriating, or retaining any proprietary, confidential, or trade secret information of Bankers Life, including all confidential rate information, sales manuals, customer lists, prospect lists, policyholder cards, policyholder contact data, and any other information regarding Bankers Life's policyholders;

11

(c)     Directly or indirectly contacting, soliciting, diverting, or inducing any policyholder of Bankers Life to relinquish, surrender, replace, or lapse any policy issued by Bankers Life within Orange, Seminole and Osceola counties in Florida; and

(d)     Directly or indirectly contacting, soliciting, or hiring any agent or employee of Bankers Life within Orange, Seminole and Osceola counties in Florida.

IT IS FURTHER ORDERED that Plaintiff shall post cash or a bond in the amount of $10,000 as security to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.  The $10,000 bond previously posted in connection with the temporary restraining order may stand as the bond for this preliminary injunction order.

IT IS FURTHER ORDERED that this Preliminary Injunction Order shall expire upon the conclusion of the trial of this matter.

ENTER:


_____
UNITED STATES DISTRICT JUDGE

DATED:

**Copies sent to:**

David K. Haase                                          Kevin Volsky
Todd M. Church                                          2410 Grandview Avenue
Littler Mendelson, P.C.                                 Sanford, FL, 32771
200 North LaSalle Street
Suite 2900                                                          Defendant
Chicago, IL 60601

Counsel for Plaintiff